Argued and submitted January 15, affirmed October 30, 1985

In the Matter of the Compensation of
Jefferson Davis, Claimant.

HOME INSURANCE COMPANY,
*Petitioner,*

*v.*

EBI COMPANIES et al,
*Respondents.*

(81-10466, 82-02086, 82-08340, 82-08341; CA A31665)

708 P2d 1157

Deborah L. Sather, Portland, argued the cause for petitioner. With her on the brief were Frank A. Moscato and Moscato & Byerly, Portland.

Jerald P. Keene, Portland, argued the cause for respondent EBI Companies. With him on the brief were John Klor and Roberts, Reinisch & Klor, P.C., Portland.

Jaye Caroline Fraser, Eugene, argued the cause for respondent Truck Insurance Exchange. With her on the brief was Luvaas, Cobb, Richards & Fraser, P.C., Eugene.

James N. Westwood, Portland, argued the cause for respondent North Pacific Insurance Company. With him on the brief were Brian B. Doherty and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Claimant was employed by Interstate Tractor and Equipment for approximately 14 years. During that time, several different worker's compensation carriers provided coverage to Interstate: North Pacific Insurance Company (Oregon Auto), June 1, 1973, to June 30, 1975; EBI Companies, July 1, 1975, to August 1, 1979; Truck Insurance Company, August 1, 1979, to August 6 or 7, 1981; and Home Insurance Company, August 8, 1981, through the time of the hearing. The issue in this case is which of the four liability carriers is responsible for claimant's compensable injury. Home Insurance Company seeks review of an order of the Workers' Compensation Board, which affirmed the referee's order assigning responsibility for the claim to Home Insurance. Claimant is not a party to the review. We affirm.

Claimant was employed as a heavy equipment mechanic for Interstate. He sustained his first back injury on February 9, 1975, when he fell while steam cleaning an engine. He underwent surgery in July, 1975, for a herniated disc at the L5-S1 level. That claim, which was accepted by North Pacific, was closed by a determination order issued May 7, 1976. On April 12, 1976, claimant sustained a second injury. That injury was diagnosed by Dr. McHolick, claimant's treating physician, as a "myosistis type of flare up" attributable to the 1975 injury; claimant returned to work after conservative care. That claim was also accepted by North Pacific.

On October 24, 1977, claimant "felt something snap" in his back and suffered sharp pain when he lifted a 200-pound toolbox at work. A claim was filed against and accepted by EBI. Claimant again was treated conservatively and returned to work. He sustained additional injuries on March 13, 1978, while using a sledge hammer, and on August 9, 1978, while pulling on a drum line. McHolick initially characterized those injuries as related to the 1977 injury, and EBI accepted responsibility as an aggravation of that injury.

On March 18, 1981, claimant again developed severe back pain while moving a transmission weighing between 600 and 700 pounds. A laminectomy was performed on August 25, 1981, and a large, loose disc fragment was removed from the L4-5 area. Claims were filed against both EBI and Truck Insurance. Truck Insurance issued a denial on April 2, 1981;

EBI accepted responsibility through October 22, 1981, when it issued a "back-up" denial.

Claimant was released for "light work" and returned to his job at Interstate on December 21, 1981. He was still experiencing some back pain, and he wore a back support to help protect his back. On his return, his employer began screening his assignments to attempt to select lighter duty jobs for him. Although most of the jobs claimant was assigned to do were less strenuous than the jobs assigned to him before his August, 1981, surgery, they still required climbing on heavy machinery, pushing and pulling, twisting and bending in awkward positions and occasional lifting in excess of 50 pounds.

With the exception of a one-week layoff for lack of work and one day of sick leave for reasons apparently unrelated to his back, claimant worked from December 21, 1981, through January 20, 1982. During that period, he experienced no specific injurious incident or trauma, but developed a gradual increase in back and right leg pain which became so severe that he had to leave work. He also developed new symptoms, including pain on the outside of his right foot and a weakness of the right calf muscles. He underwent a myelogram on February 11, 1982, which revealed a large extradural defect at the L5-S1 level (which had not been present when a previous myelogram was done, just before the 1981 laminectomy). Surgery was performed on February 22, 1982, and a free fragment of disc was removed at the L5-S1 level.

Claimant filed a new claim with Truck Insurance in February, 1982, for an occupational disease or injury of June 23, 1981, a new claim against North Pacific Insurance sometime after July 8, 1982, for an occupational disease or injury of June 23, 1981, and a claim against Home Insurance in August, 1982, for an occupational disease or injury of August 13, 1982. Truck Insurance denied the claim on February 23, 1982; North Pacific denied the claim on July 28, 1982; Home Insurance denied the claim on September 7, 1982.

With Home Insurance's denial, each of the insurers effectively had denied responsibility for claimant's disability after March 18, 1981. He requested a hearing on each of the denials: (1) EBI's October 22, 1981, backup denial of his

March, 1981, injury claim; (2) Truck Insurance's April 2, 1981, denial of his March, 1981, injury claim; (3) Truck Insurance's February 23, 1982, denial of his occupational injury or disease claim; (4) North Pacific's July 28, 1982, denial of his occupational injury or disease claim; and (5) Home Insurance's September 7, 1982, denial of his occupational disease or injury claim. A consolidated hearing on the denials was held on November 17, 1982.

The referee found that the evidence supported a conclusion that claimant's employment in December, 1981, and January, 1982, independently contributed to his disability and that Home Insurance therefore was liable for claimant's disability beginning in January, 1982. The referee concluded that Home Insurance was not liable for disability compensation or medical treatment before August 8, 1981, when its coverage began. He also concluded that any claims for compensation from March, 1981, through August 7, 1981, would have been the responsibility of Truck Insurance[1] but that such claims were unenforceable under ORS 656.319.[2] The referee entered an order, providing in pertinent part:

"IT IS THEREFORE ORDERED that claimant's request for hearing from the April 2, 1981 denial of Truck Insurance Exchange is dismissed.

"IT IS FURTHER ORDERED that the October 22, 1981

---

[1] The referee stated:

"I find that the evidence clearly shows that claimant's March 1981 injury independently contributed to his disability and the subsequent need for surgical removal of a herniated disc. Were it not for Truck Insurance Exchange's denial and claimant's untimely appeal, Truck Insurance Exchange would have become responsible for claimant's disability after March 1981. Claimant filed a second claim against Truck Insurance Exchange for an occupational injury or disease in June 1981. The evidence indicates that claimant's condition at that point was a continuation of the denied March 1981 injury. Claimant has shown no new injury in June, 1981."

[2] ORS 656.319(1) provides:

"With respect to objection by a claimant to denial of a claim for compensation under ORS 656.262, a hearing thereon shall not be granted and the claim shall not be enforceable unless:

"(a) A request for hearing is filed not later than the 60th day after the claimant was notified of the denial; or

"(b) The request is filed not later than the 180th day after notification of denial and the claimant establishes at a hearing that there was good cause for failure to file the request by the 60th day after notification of denial."

denial of EBI Companies is affirmed to the extent that it denies *responsibility* for claimant's condition after March 1981.

"IT IS FURTHER ORDERED that the February 23, 1982 denial of Truck Insurance Exchange is affirmed.

"IT IS FURTHER ORDERED that the July 28, 1982 denial of North Pacific Insurance Company is affirmed.

"IT IS FURTHER ORDERED that the September 7, 1982 denial of Home Insurance Company is set aside. The claim is remanded to Home Insurance Company for acceptance and payment of all compensation due until closure pursuant to ORS 656.268." (Emphasis in original.)

Home Insurance sought review by the Board, contending that either Truck Insurance or EBI was the responsible insurer. The Board affirmed the referee's order but concluded that it was unnecessary to address the issue of EBI's backup denial. *See Bauman v. SAIF,* 295 Or 788, 670 P2d 1027 (1983). In this petition for review, Home Insurance asserts that the Board erred in assigning it responsibility, because there is insufficient evidence that during the time when Home was Interstate's insurer claimant suffered any injury that independently contributed to his disability. Home also argues that EBI should be precluded from relying on its October 22, 1982, denial of claimant's January, 1982, claim and that considerations of justice require that claimant be entitled to challenge Truck Insurance's denial of the 1981 injury claim.

In successive injury cases, we apply the "last injury rule" adopted from 4 Larson, *Workmen's Compensation Law* 17-71, 17-78, § 95.12 (1976):

"If the [last] injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second * * *.

"On the other hand, if the [last] incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributes the major part to the final condition. This is consistent with the general principle of the compensability of the aggravation of a pre-existing condition."

*See Boise Cascade Corp. v. Starbuck,* 296 Or 238, 675 P2d 1044 (1984); *Industrial Indemnity Co. v. Kearns,* 70 Or App 583, 586-87, 690 P2d 1068 (1984). The rule requires proof that the last injury "contributed independently" to a claimant's disability; given that proof, responsibility properly is placed on the insurer at the time of the last injury. *Industrial Indemnity Co. v. Kearns, supra,* 70 Or App at 587.

The primary medical evidence was from claimant's treating physician, McHolick, who expressed the opinion that claimant's initial injury in 1975 increased his susceptibility to further injury but that interim injuries played a part in the eventual extrusion of other disc fragments. He indicated that the extruded disc fragments removed from the L4-5 level in August, 1981, and from the L5-S1 level in February, 1982, probably were related in that they may have originated from a single hole in the annulus fibrosis at the L5-S1 level, which was the site of claimant's first back surgery. He was unable to say specifically when the extrusion resulting in the February, 1982, surgery occurred, although there was evidence that it necessarily was after claimant's August, 1981, myelogram. He indicated, however, that claimant's twisting and lifting activities on the job could be a major contributing factor to the working out of a free disc fragment through a tear in the annulus fibrosis and that claimant's work activities in December, 1981, and January, 1982, "certainly could have" contributed to the later disc extrusion.

Although claimant had some continuing symptoms after his August, 1981, surgery and although he could recall no specific traumatic incident after his return to work in December, 1981, there was evidence that he had experienced increasing pain accompanied by new symptoms *after* his return to work. Even though he was on "light duty," his job as a heavy equipment mechanic required him to perform many of the same physically strenouous tasks as before. The medical evidence that he suffered a new disc herniation is undisputed, and McHolick testified that the exertion involved in the December, 1981, and January, 1982, employment could have triggered that herniation. In this type of case, it is not required that expert medical opinion link a specific exertion to the compensable condition. *Hamel v. Tri-Met,* 54 Or App 503, 508, 635 P2d 662 (1981). From the lay and expert medical evidence, we find that claimant suffered a new injury during his last

period of employment—when Home Insurance was his employer's insurer—which independently contributed to his disability. That his injury during that period may have concurred with an earlier injury to cause the disability does not operate to relieve Home Insurance of liability for claimant's disability beginning in January, 1982.

We turn, then, to the question of EBI's denial of October 22, 1981, by which it purported to deny responsiblity for claimant's condition after March, 1981. We note that, although he was off work because of his back condition from before the time of EBI's denial until December 21, 1982, and thus may have been entitled to additional time loss benefits and an award of disability on that initially accepted claim, the Board's order made no provision for assignment of responsibility to any insurer for the period between EBI's October 22 denial and claimant's return to work on December 21, the earliest date on which Home Insurance could have become responsible. It is clear that under *Bauman v. SAIF, supra,* and *U.S. National Bank v. Wagoner,* 71 Or App 266, 692 P2d 149 (1984), *rev den* 298 Or 773 (1985), absent claimant's fraud or misrepresentation, EBI could not have accepted the claim, made payments for over 60 days and then decided to litigate the issue of compensability. We see no reason to apply a different standard when the issue is responsibility. *See Jeld-Wen v. McGehee,* 72 Or App 12, 695 P2d 92 (1984). The only issue raised by Home Insurance on this review, however, is whether EBI is precluded from relying on its earlier denial to deny responsibility for claimant's *January, 1982, claim.* In view of our holding that that claim involves a new injury for which Home Insurance is the responsible insurer, we agree with the Board that it is not necessary to decide that question. Claimant has not appealed the failure of the Board to address which insurer should be responsible for the time period of October 22, to December 21, 1981, and that issue is not before us.

Finally, we decline to discuss Home Insurance's contention that claimant should be allowed to contest Truck Insurance's denial of the March, 1981, claim. Home Insurance has failed to demonstrate that that issue affects its interests, and claimant has not sought judicial review.

Affirmed.