In the Matter of the Compensation of
Jerry W. Wine, Claimant.

## NORTHWEST FARM BUREAU INSURANCE COMPANY et al,
*Petitioners,*

*v.*

## WINE et al,
*Respondents.*

(WCB 82-10473, 84-04838, 85-03699; CA A39828)

738 P2d 596

Paul J. De Muniz, Salem, argued the cause for petitioners. With him on the brief was Garrett, Seideman, Hemann, Robertson & De Muniz, P.C., Salem.

Christine Chute, Assistant Attorney General, Salem, argued the cause for respondents SAIF Corporation and Hoskinson Logging. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

L. Thomas Clark, Bend, filed the brief for respondent Jerry W. Wine.

Before Warden, Presiding Judge, and Joseph, Chief Judge,* and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

---

* Joseph, C. J., *vice* Young, J.

## VAN HOOMISSEN, J.

Northwest Farm Bureau (Northwest) seeks review of a Workers' Compensation Board order holding that Northwest is responsible for claimant's aggravation claim. It contends that the Board misapplied the "last injurious exposure" rule and that SAIF is the responsible insurer. On *de novo* review, ORS 656.298, we affirm.

In September, 1975, claimant broke his right leg while working as a timber faller for SAIF's insured. SAIF accepted his claim. His injury required several surgeries. As a result, his right leg is one and one-quarter inches shorter than his left leg. That condition has also caused him back pain. He was awarded 85 percent permanent disability for the loss of the use of his right leg.

In June, 1981, claimant began working for Northwest's insured as a mechanic. In July, 1982, while sliding a wooden motor carrier out of his way, he felt a sharp pain in his back. His family physician, Dr. Detweiler, diagnosed low back strain. He also saw evidence of degenerative arthritis of the spine. He referred claimant to Dr. Carroll. Claimant filed an aggravation claim against SAIF and a new injury claim against Northwest. SAIF denied the aggravation claim; Northwest accepted the new injury claim. Claimant was treated for low back strain. He returned to light duty work after about three weeks. He agrees that his back pain returned to its pre-July, 1982, level by August, 1982, when his claim was closed.

In August, 1983, claimant went to Carroll, complaining of increased back pain. He saw him again in March, 1984. Claimant filed an aggravation claim with Northwest, which was denied. Northwest concluded that his compensable back condition of July, 1982, had not worsened and that his back problems resulted from his 1975 injury.

In April, 1984, Carroll wrote, in relevant part:

> "I cannot deny, at the time I saw the patient for Dr. Detwiler in September of 1982, that I felt that the July 1982 episode was an acute injury and significantly independent from his other back complaints. However, the patient's back problems at the present time are not due to this one episode of back strain. They are due to overall leg discrepancy and the

fact that the patient has carried around a cast and been immobilized for a period of almost five years from the initial injury in September of 1975 to his last office visit here for still questionable healing of the fracture in the right leg in November of 1980, at which time he was even still wearing a brace. This shortening of the right leg and walking in casts for many years has caused a deformity and arthritis of the lower spine, which is now symptomatic. The patient has been wearing a lift, but frequently is without it, especially in the evening. I feel so strongly about the continued back pain that I think the patient is a candidate at this time for consideration of shortening of the good left leg through an improved intermedullary technique in the left femur. This would be recommended in order to try to head off any further back problems."

Orthopaedic Consultants examined claimant in May. It reported:

"It is the opinion of the examiners that it appears that patient's back complaints began principally following the leg injury and were aggravated substantially by the lifting events of 1982."

In June, Carroll concurred with Orthopaedic Consultants. In September, Carroll stated, in relevant part:

"After reviewing this case once more, I would like to reiterate that I believe that [claimant's] back problem is an ongoing condition which became symptomatic and continues to be symptomatic, solely due to his 1975 injury and has not been materially contributed by the July 1982 incident. In reviewing the Orthopaedic Consultants' analysis of the problem, I agree with their examination and findings, but in all fairness, I think their conclusion that the leg injury was aggravated substantially by the lifting event of 1982 is not accurate. I would place the greatest blame for the patient's ongoing symptoms on his original injury."

During his deposition, Carroll was asked about that statement. He explained:

"That was a harsh statement. I, perhaps, should not have agreed to sign that. You were kind enough to later on in the paragraph, to modify your stance a little bit, so I accepted it.

" 'In reviewing Orthopaedic Consultants' analysis * * * I agree from their examination and findings, but in all fairness, I think that their conclusion that the leg injury was aggravated substantially by the lifting in 1982 was not accurate. I would place the greatest to [sic] blame on [sic]

the patient's ongoing symptoms on his original injury,' meaning that there is consideration, I would say by that statement, that there is consideration of the other injury. But, the 1982 injury, I felt was minor compared to the total overall picture."

In April, 1985, Carroll reported:

"I think that [claimant's] back condition is primarily a result of his old injuries in 1975 and 1982, and can be considered the expected progression of the underlying condition from these accidents."

Claimant testified that he had had some back problems since his 1975 leg injury but that the 1982 incident resulted in immediate pain and a need to seek medical treatment. He stated that his back condition has continued to worsen without any further injuries or incidents and that he suffers "quite a bit" more pain than he did before the 1982 incident. The referee found claimant to be a credible and reliable witness. He concluded:

"Based upon the current state of the law that the second employer remains responsible if the injury which occurred while in its employ contributed independently to the claimant's condition, I find Northwest Farm Bureau to be the responsible party in this matter. Dr. Carroll, in his deposition, stated the 1982 injury contributed, albeit in a minor way, to the progression of the underlying condition. The 1975 injury covered by SAIF may have been the major cause, but that is not the criteria [sic] used to determine responsibility."

The Board affirmed, and Northwest appeals.

■ In *Industrial Indemnity Co. v. Kearns,* 70 Or App 583, 690 P2d 1068 (1984), we approved the Board's rule that states, in part:

" 'Where there are multiple accepted injuries involving the same body part, we will assume that the last injury contributed independently to the condition now requiring further medical services or resulting in an additional disability, and the employer/insurer on the risk at the time of the most recent injury has the burden of proving that some other accepted injury last contributed independently to the condition which presently gives rise to the claim for compensation; e.g., that its accepted injury caused only symptoms of the condition or involved a different condition affecting the same body part.' " 70 Or App at 585.

*See Boise Cascade Corp. v. Starbuck,* 296 Or 238, 244, 675 P2d 1044 (1984). Under *Kearns,* when the successive accepted claims are for injury to the same body part, there is a rebuttable presumption that the last injury contributed independently to the worsened condition and that the insurer at that time is responsible. Therefore, the burden was on Northwest, the second insurer, to prove that the 1982 injury did not contribute independently to claimant's back condition.

■ Claimant's testimony and the medical evidence demonstrate that he had had some back problems before the July, 1982 incident, but that his condition was worse after the incident. Although he recovered temporarily from the incident, we agree with the referee and the Board that Northwest has not met its burden. Therefore, Northwest is responsible.

Affirmed.